## SHARRAR *v.* KEMPSHELL.

1. MORTGAGES—DEED GIVEN AS SECURITY—CANCELLATION OF IN-STRUMENTS—LIEN—CONDITION SUBSEQUENT—CONVEYANCING.

   Complainant and her deceased husband conveyed, by deed absolute in form, eighty acres of land to her son and his wife, taking back a separate contract for support of complainant and her husband, during their lives, and also transferring certain personal property to said grantees. Complainant's husband died. Subsequently the wife deserted the son, who obtained a divorce, remarried, and several years afterwards died, leaving defendant, his second wife, and several children in possession of the premises. By the terms of said contract for support it was agreed that the son and wife should pay a mortgage of $300 outstanding upon the premises, but after his death it remained unpaid, and the son's widow procured an assignment thereof to a third party, who, at her instance, commenced foreclosure proceedings. Before sale complainant tendered the amount due and attempted to secure an assignment to her, which was refused by the assignee. Averring the failure of said widow to provide complainant with the stipulated support, complainant instituted suit to be subrogated to the rights of the assignee of the mortgage, to re-

deem from the sale, and for other relief. *Held*, that a decree setting aside the deed to complainant's son and first wife for failure of consideration, and decreeing that defendant, who had procured a transfer of certain personal property from the son, and had the use of the farm for several years, should have a lien for the value of improvements made on the farm for $200, payable after complainant's death, was justified.

2. SAME.

Nor was it erroneous to provide that an outstanding mortgage executed in place of the original mortgage should constitute a first lien on the premises.

3. SAME.

The court rightly refused to award any sum to the heirs of complainant's son for improvements made while the property was held by the entirety.

4. SAME—PRAYER.

And the relief was warranted by the prayer of complainant's bill.

Appeal from Isabella; Dodds, J. Submitted January 23, 1912. (Docket No. 144.) Decided March 12, 1912.

Bill by Dorothy Sharrar against Hattie Kempshell, O. S. Wood, Mary Draper, and others, for the redemption of a mortgage and other relief. From a decree for complainant, defendants Mary Draper, Bernice Draper, and Agnes Draper appeal. Affirmed.

*Charles T. Russell* and *F. M. Burwash*, for complainant.

*W. D. Fast*, for defendants.

MOORE, C. J. Stripped of its verbiage, the bill of complaint is in substance as follows: That on the 26th day of November, 1888, Gottfred Sharrer and Betsey M. Sharrer, his wife, were the owners of 80 acres of land in Isabella county upon which they resided. That on or about the 26th of November, 1888, said Gottfred Sharrer and Betsey M. Sharrer, his wife, became indebted to Charles Withey in the sum of $300, and made a mort-

gage to him on said land for that amount, with interest, which mortgage was in the usual form, and was recorded in the office of the register of deeds for the said county. That before November 26, 1894, said mortgage was sold to the Ann Arbor Savings Bank.

"That on or about the 13th day of October Gottfred Sharrer and your oratrix, who was then his lawful wife, said former wife, Betsey M., having theretofore died, made and delivered to Charles E. Draper and Hattie Draper, his wife, a deed of conveyance absolute in form."

That although said deed is absolute in form, and purports to convey the land in fee for the consideration of $1, and the assuming by the said second parties of the Withey mortgage—

"Yet in truth and in fact, at the time of the execution and delivery thereof, it was expressly understood and agreed by and between the parties thereto that the real consideration for such conveyance, and such conveyance was upon condition that the parties of the second part should assume and pay said mortgage therein referred to, and should also provide said parties of the second part with a comfortable living for and during the term of their natural lives, and that of the survivor of them, and that such agreement to provide for said second parties a comfortable living was intended to be expressed by the terms of a certain written instrument known as a 'life lease,' among the said parties, which was then and there executed by them contemporaneously with said deed and as part of the same transaction."

That, notwithstanding the making of said deed and life lease, the parties thereto did not enter into the execution thereof until after the making of a contract hereinafter mentioned. That thereafter, and on or about the 18th day of March, A. D. 1897, said parties, Gottfred Sharrer and your oratrix, Dorothy, his wife, and Charles E. Draper and Hattie Draper, his wife, entered into a new agreement in writing which as to said real estate property became a substitute for the said life lease, and said deed of conveyance from said Gottfred and your oratrix to said

Charles E. and Hattie Draper. This agreement is then set out *in extenso*.

The bill further avers:

"That just before said contract last mentioned was entered into said Gottfred Sharrer had become very sick, and both he and your oratrix being then advanced in years, and said Gottfred expecting to die, and being anxious to provide more certainly and effectually for the support and maintenance of your oratrix, the personal property in said agreement mentioned was included therein. That said Charles E. Draper was the son of your oratrix by a former marriage. That between him and your oratrix there existed then and at all times theretofore the utmost good will, and your oratrix had great confidence in and affection for said Charles. That said Gottfred Sharrer and your oratrix in entering into said contract and agreement had in mind the mutual affection and confidence existing between your oratrix and said Charles E., and were desirous of securing to themselves during their lives and the life of the survivor of them the maintenance and support of each of them in a comfortable manner, and that it was understood and agreed by all parties to said deed of conveyance to said Charles E. and Hattie, said life lease, and said subsequent contract that such support and maintenance was the principal and moving consideration for such deed of conveyance, and that said deed of conveyance of the land and the conveyance of the personal property referred to in the contract last mentioned should be, and was, on condition of such comfortable maintenance and support being furnished to said Gottfred and your oratrix. * * * That said Gottfred Sharrer died on or about the 6th day of April, A. D. 1897, leaving him surviving your oratrix, his widow. That no child or children had ever been born to said Gottfred, and that he left him surviving neither parents nor brother nor sister, and that your oratrix is informed and believes that no kin survive said Gottfred. That the personal property referred to in the contract last mentioned was substantially as follows, to wit: Two horses, worth about $200; harness and wagon, worth about $50; plows, harrows, and cultivators, worth about $50; three cows, worth about $75; some crops consisting of corn, oats, and potatoes which had been grown on said land. That said Charles E. Draper and Hattie, his wife, did not then have any horses,

nor farming implements other than those given to them by said contract, nor means of procuring such with which to work said farm and carry out the provisions for support therein provided. And your oratrix avers on information and belief that the mortgage of $300 heretofore mentioned was made to raise money to pay for the team of horses turned over by said contract to said Charles E. and Hattie Draper. * * * That after March 18, 1897, and prior to November 3, 1902, said Hattie Draper deserted said Charles E. Draper, and that on the day last mentioned a decree of divorce was entered by which decree the marriage between the said complainant Charles E. Draper and Hattie Draper was dissolved. That said Charles E. Draper continued to reside on the premises, and about the 29th of November, 1902, married Mary Miner, defendant. That Mary Miner at the time of said marriage was a widow and had a family of six children, all of whom continued to live with her and Charles E. Draper to be supported upon the said premises and the proceeds thereof. * * * That Hattie Draper departed from the State of Michigan and has not returned thereto, and has married a man named Kempshell, with whom she now resides in the State of Washington. That Charles E. Draper died intestate April, 1907. That at the time of the death of Charles E. Draper complainant was living in the log house on the farm furnished with maintenance by Charles E. Draper, though not entirely as provided for by the contract. That Mary Draper has continued to live on said premises in the frame farmhouse thereon, and has farmed the same and enjoyed the products and the fruits thereof, but wholly disregarding the rights of your oratrix in said premises, and desiring and intending to deprive your oratrix of the support and maintenance to which she was justly entitled upon and from said premises, has refused to permit your oratrix to remain in the log farmhouse thereon in which she resided until the death of said Charles E. Draper, and has driven her therefrom, and has entirely deprived her of any and all of the proceeds thereof. * * * That said Hattie Kempshell, formerly Hattie Draper, has ever since the death of said Charles E. Draper resided in the State of Washington, and has not in any way carried out the terms of the agreement entered into by her and said Charles E. Draper for the maintenance of your oratrix. * * * That Mary Draper, intending to deprive your

oratrix of her just support from said premises, has, as
your oratrix is informed and believes, procured the Withey
mortgage to be assigned to one O. S. Wood, who has
caused it to be foreclosed and said premises to be sold to
him, for the sum of $375.49 or thereabouts.   *   *   *
That after the assignment of said mortgage to said Wood,
and before said foreclosure sale, your oratrix by her agent
attempted to secure from said Wood an assignment of
said mortgage and offered to pay the amount due thereon,
but that said Wood acting, as your oratrix is informed
and believes, for and in collusion with Mary Draper, re-
fused to sell or assign said mortgage to your oratrix, but
proceeded to foreclose it with the intention of getting the
title to said premises and depriving the complainant of
her just rights therein.   That complainant offers to pay
to O. S. Wood the amount lawfully required for the re-
demption of said premises, and brings the money neces-
sary for that purpose into court here, and offers to pay
the same to the said O. S. Wood, either by way of re-
demption or for an assignment of said sheriff's deed and
the conveyance to your oratrix of the premises therein de-
scribed.   That by reason of the premises complainant is
entitled to redeem from said foreclosure sale and to be
subrogated to the rights of the purchaser at said sale, and
to have the support provided for in the contract set up in
this bill in paragraph eight, and to be decreed proper
security for the furnishing of said support in the future,
and that in default of such security she be decreed a con-
veyance to her of said property, or that a decree be made
which shall operate as a conveyance thereof to her.   That
complainant is entitled to have said personal property or
the proceeds thereof which may be in the possession of
any of the parties hereto decreed to her for the purpose of
securing to her said support and maintenance."

The prayer of the bill is:

"(1) That it may be decreed that your oratrix is en-
titled to redeem from the said foreclosure sales on pay-
ment of the amount due thereon, and to be subrogated to
the rights of the holder of said sheriff's deeds in said real
estate.   *   *   *

"(5) That said defendant O. S. Wood may be enjoined
and restrained from selling, conveying, incumbering, or
otherwise disposing of said real estate, except to your
oratrix.

"(6) And that your oratrix have leave to record such decree in the office of the Register of Deeds in and for the county of Isabella, aforesaid.

"(7) And that your oratrix have such further or other relief as shall be agreeable to equity and good conscience."

The necessary pleadings were filed to put the case at issue. It was tried in open court, and the judge rendered a decree, the material parts of which are as follows:

"This cause having been brought on to be heard, * * * that the deed be set aside because its provisions were not carried out, and the court also having found from the testimony in said cause that Dorothy Sharrer is the only heir to said Gottfred Sharrer so far as the parties to this suit are concerned, takes said land by inheritance, and, so far as the parties to this suit are concerned, is the owner thereof, and the court also having found and determined that Mary Draper is entitled to $200 for improvements put upon said land, subject, however, to the rights of Dorothy Sharrer and the use of said premises during her lifetime, and the court also having found and determined that the rights of said Dorothy Sharrer and said Mary Draper are subject to the mortgage given by Hattie Kempshell to Fred Russell, which mortgage was given for the purpose of redeeming from a mortgage given by Gottfred Sharrer and wife prior to the said alleged conveyance to Charles Draper and his wife, shall take precedence over all other rights and claims of the parties hereto. * * * The said mortgage to said Fred Russell shall take precedence over all claims or rights of the parties hereto, and constitute a prior lien upon the said land to all said rights. That the said deed from Gottfred Sharrer and Dorothy Sharrer, his wife, to Charles Draper and Hattie Draper, now Hattie Kempshell, shall be canceled, set aside, and held for naught. That, so far as the rights of the parties in this case are concerned in said land, said Dorothy Sharrer is held, determined, and decreed to be the only heir of the said Gottfred Sharrer, and to inherit the said land subject to the said mortgage. * * * That said Mary Draper shall receive the sum of $200, which $200 shall not be payable until after the death of said Dorothy Sharrer, but shall constitute a lien upon said land subject to the said mortgage to said Fred Russell, and subject also to the use of said premises by said Dorothy Sharrer during her life-

time. That, should said Dorothy Sharrer sell the above-described real estate, said $200 shall be so invested that the principal shall be secured to said Mary Draper in a manner so as to be paid to her after the death of said Dorothy Sharrer."

The appellants say the decree is wrong for the following reasons:

"(1) The court erred in determining the value of the improvements made by Mary Draper and fixing the amount at $200.

"(2) The court erred in postponing the payment of the $200 to Mary Draper until after the death of the complainant.

"(3) The court erred in decreeing that one Fred Russell has a mortgage on the land in question, which is a valid lien thereon, and takes precedence over all claims or rights of the parties hereto, and a prior lien to the one given to Mary Draper for $200.

"(4) The court erred in refusing to award any sum of money to the defendants Bernice and Agnes Draper, heirs of the said Charles Draper, for the value of the improvements made on the said land by the said Charles Draper and Mary Draper from the time of his marriage to Mary Draper to his death.

"(5) The court erred in setting aside the deed for failure of consideration to Charles Draper and wife, Hattie Draper, from Gottfred Sharrer and wife, Dorothy Sharrer.

"(6) The court erred in setting aside the deed to Charles Draper and wife, Hattie, from Gottfred Sharrer and wife, Dorothy, because the complainant did not pray in her bill of complaint for the setting aside of said deed, but only that she be decreed a lien on said land and entitled to her support and security therefor."

1, 2. The first two of these groups may be treated together. The record shows that the personal property which had been conveyed to Charles and Hattie, as part of the consideration for the future support of Dorothy, remained in the possession of Charles, on the farm, when Hattie left him. Mary induced him before she married him to give her a bill of sale of this personal property. Mary has that property yet, or its proceeds, worth, as the

bill shows, about $375. She had the use of the complainant's cows for two years before the death of Charles; and she has had the use of the farm from his death until now, worth upwards of $100 a year. We think the allowance made and the time of its payment is fully justified by the record.

3. The record shows that Mr. Russell furnished the money to take care of the Withey mortgage which had been foreclosed by Mr. Wood. It would not be equitable to hold otherwise than was done by the court.

4. The land was held by Charles Draper and Hattie Draper by the entireties. The allowance which should be made because of improvements made after the marriage of Charles Draper and Mary Draper was fully covered.

5, 6. Groups 5 and 6 may be considered together. The statement in the bill and the prayer thereof which we have heretofore quoted is sufficient. The proof is also sufficient to justify the decree.

The decree is affirmed, with costs.

STEERE, McALVAY, BROOKE, BLAIR, STONE, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.